**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

NESTOR OYOLA,

               **Plaintiff,**

-vs-                                    **Case No.  6:06-cv-510-Orl-31JGG**

EMPIRE INDEMNITY INSURANCE CO.,

               **Defendant.**

_____

# ORDER

This matter comes before the Court on the motion for summary judgment (Doc. 20) filed by the Defendant, Empire Indemnity Insurance Co. ("Empire"), the response (Doc. 24) filed by the Plaintiff, Nestor Oyola ("Oyola"), and Empire's reply (Doc. 28).

**I.    Background[1]**

Oyola and his wife, Laura Hernandez ("Hernandez") owned a house in Osceola County.  In April 2004, Oyola and Hernandez obtained a $120,000 mortgage on the house from Option One Mortgage Corporation ("Option One") and homeowner's insurance from First Protective Insurance Company ("First Protective").  In late 2004 – the precise date is not clear from the record – First Protective notified Hernandez that it was cancelling its coverage. Subsequently, Option One force-placed Oyola and Hernandez into coverage with Empire.  The Empire policy, which had a $120,000 liability limit, had a term of December 1, 2004 to December 1, 2005.  (Doc. 2-2 at 3).

_____

[1]So far as the Court can tell from the parties' submissions, the following facts are undisputed.

The Empire policy listed Option One as the "Named Insured Mortgagee" and Oyola as "Additional Named Insured."  (Doc. 2-2 at 3).

On January 12, 2005, the house was destroyed by fire.

At some point – again, the record is not clear as to the precise date – First Protective reinstated its coverage.[2]  On May 20, 2005 First Protective issued a $120,000 check to Oyola, Hernandez, and Option One.  (Doc. 22-2 at 10).

---

[2]Hernandez's deposition includes the following exchange:

Q       After the fire I think we've talked about how First Protective agreed to pay you the insurance monies that you claimed?

A       For the fire?

Q       Right.

A       Yes.

Q       Did they agree to reinstate this policy of insurance?

A       Yes.

Q       So they reinstated the policy of insurance that had the effective dates from April 12th, 2004 to April 12th, 2005?

A       I had to make them another check.

Q       Right.  You paid the back premiums too?

A       I owed them 140-something dollars.  They asked me to make out a check and they would reinstate my insurance.

(Doc. 20-2 at 35-36).  Thus, assuming Hernandez is correct, First Protective took action after the fire to reinstate its coverage as of some date prior to the fire.

Oyola also filed a claim with Empire, which also issued a $120,000 check.  (Doc. 22-2 at

11).  But Empire stopped payment upon learning of the existence of the other policy.  Empire now

seeks summary judgment that its policy was not in effect on the day the fire occurred.

## II.    Standards

A party is entitled to summary judgment when the party can show that there is no genuine

issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the

substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark*

*v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)..

When a party moving for summary judgment points out an absence of evidence on a

dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving

party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine

issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and

citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who

fails to make a showing sufficient to establish a genuine issue of fact for trial.  *Id.* at 322, 324-25.

The party opposing a motion for summary judgment must rely on more than conclusory statements

or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir.

1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most

favorable to the party opposing the motion, and resolve all reasonable doubts against the moving

party.  *Anderson*, 477 U.S. at 255.  The Court is not, however, required to accept all of the

-3-

non-movant's factual characterizations and legal arguments.  *Beal v. Paramount Pictures Corp.*,

20 F.3d 454, 458-59 (11th Cir 1994).

## III.    Analysis

Although its brief is somewhat hard to follow, Empire appears to contend that

reinstatement of coverage by First Protective cancelled its own coverage, and that this cancellation

occurred (or should be given effect as though it occurred) prior to the fire.  The "Cancellation"

section of the Empire policy at issue provides, in pertinent part, that

> Coverage under this policy shall automatically and without prior notice cancel when
> ... the Named Insured Mortgagee has been provided with another policy by the
> Additional Named Insured that meets the requirements of the Named Insured
> Mortgagee as set forth in the mortgage agreement applicable to the Described
> Property.

(Doc. 2-2 at 7).

Under Florida law, interpretation of an insurance contract is a matter of law to be decided

by the court.  *Gulf Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985).

Florida law requires that insurance contracts be construed in accordance with the plain language of

the policy.  *Swire Pacific Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003).  If the

relevant policy language is susceptible to more than one reasonable interpretation, one providing

coverage and the other limiting coverage, the insurance policy is considered ambiguous.  *Id.*  An

ambiguous provision is construed in favor of the insured and strictly against the drafter.  *Id.*

By its plain terms, the provision cited by Empire was intended to cancel its policy when the

mortgagee "ha[d] been provided with another policy" that met certain criteria specified in the

mortgage agreement.  (Doc. 2-2 at 7).  Clearly, the language was intended to cover the typical

situation where the homeowner obtains replacement coverage and presents the policy to the

-4-

mortgagee, which then verifies that its interest is protected and cancels the force-placed policy. But the situation in the instant case is not typical.

Empire now seeks to have the cancellation provision interpreted so that it would be given legal effect (and cancel its policy) on the first date that other coverage is found to have existed. But such is not the language employed by Empire in drafting this provision. To activate the cancellation, Empire required the provision of an acceptable policy, not merely the existence of coverage.[3]

Empire's cancellation provision is susceptible to at least two reasonable interpretations in an atypical situation, such as this one, where another insurer retroactively restores its coverage: one in which the policy is "provided" (and cancellation of the Empire policy occurs) on the date that the other insurer takes whatever steps are needed to reinstitute coverage, and another in which cancellation occurs as of the *effective date* that the other coverage is reinstituted, no matter when the other insurer takes the steps needed to accomplish this. Both provisions are reasonable, and the Court can imagine scenarios in which either interpretation might operate to the benefit or detriment of either party. In the instant case, Empire obviously would prefer the latter interpretation. But because two reasonable interpretations exist, the provision is ambiguous. *Swire Pacific Holdings,* 845 So. 2d at 165. Because the provision is ambiguous, the Court is bound to interpret the provision in favor of the insured. *Id.* The Court therefore finds that

---

[3]Empire argues that its intent was not to provide supplemental or additional coverage, and in support points to the affidavit of Kevin Barry, a claims unit manager for Empire's program manager. To the extent that Empire's intent on this point is relevant, Barry's contention is contradicted by, *inter alia*, a policy provision titled "Other Insurance" that states "[i]f property covered by this policy is also covered by other fire insurance, we will pay on an excess basis only." (Doc. 24-2 at 23).

Empire's cancellation provision would operate in this case on the date that First Protective reinstated its coverage, rather than the effective date of that reinstatement.  Because Empire's motion is dependent upon the opposite interpretation, Empire is not entitled to summary judgment.

Even if Empire had prevailed on the contractual interpretation issue, however, it could not have prevailed on the instant motion.  As set forth in the cancellation provision, a determination that Empire's policy was cancelled before the fire would also require a finding that the (reinstated) First Mortgage policy "meets the requirements of the Named Insured Mortgagee as set forth in the mortgage agreement."  But the Court has not been provided with a copy of the mortgage agreement so as to make that finding.

The Court also notes that Empire's bottom-line argument – that "Plaintiff's policy with Empire became null and void when the mortgagee was notified that Plaintiff's policy with First Protective had been reinstated" (Doc. 20 at 5) – fails for at least two reasons.  First, it is at odds with the terms of the cancellation provision, which operates when another *policy* is provided, not when *notice* of another policy is provided.  Second, so far as the Court is aware, the record does not disclose the date that Option One was notified of the reinstatement.

Finally, a letter in the record indicates that on May 26, 2005 – four months after the fire – Empire notified Oyola that it was cancelling its policy "effective 04/12/05 12:01 A.M. Standard Time, for the following reason: other insurance coverage provided." (Doc. 24-2 at 12).  The letter also notified Oyola that Empire's records showed an "earned premium" of $525.27 for the period from December 1, 2004 to April 12, 2005, and informed him that this premium had been charged to him or to his escrow account "for the time the coverage was in force." (Doc. 24-2 at 12).  Even under Empire's interpretation of the cancellation provision, this letter is enough to raise a genuine

issue of material fact as to whether Oyola (and by extension, Option One) was provided with another policy before or after the date of the fire.

**IV.     Conclusion**

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment (Doc. 20) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 14, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party